# EXHIBIT 1

IN THE SUPERIOR COURT OF HANCOCK COUNTY

STATE OF GEORGIA

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

| | | |
|---|---|---|
| STEPHAINE Y. CHATMAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CASE NO. 13CV-106 |
| HANCOCK COUNTY SCHOOL DISTRICT, | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW,** Stephanie Y. Chatman, hereinafter referenced Appellant of plaintiff, and files this Petition/Complaint and thirteen attachments as she is dissatisfied with the decision or judgment of the Hancock County Board of Education.

### Parties , Jurisdiction, and Venue

1.

Plaintiff STEPHAINE Y. CHATMAN was an employee with the Hancock County School district and therefore this Honorable Court has subject matter jurisdiction.

2.

Hancock County School District is located in Hancock County and the Defendants are residents of HANCOCK COUNTY, GEORGIA and as such, venue is properly laid in this Honorable Court.

3.

### Background Information

It is illegal to terminate, retaliate, coerce, harass, and or prohibit an employee from filing a complaint of discrimination, participating in a complaint of discrimination and or

threatening to file a complaint. Plaintiff suffered severe loss of wages, liberty, increase surveillance, and diminished health from the retaliation endured in continuous action from the past five years on her job as an employee with the Hancock Board of Education. Plaintiff sought relief from the pervasive and severe retaliation and hostile work environment for five years, 2007-2012 through repeated request from her employer, the Board of Education to hear internal grievances filed and the Board of Education failed to take any action at all to provide relief. It is also a violation of State and Federal law to retaliate against an employee for filing previous complaints against another employer. The record shows that Hancock County Board of Education allow Supervisors to harass plaintiff and take overt employment actions against plaintiff in contravention of the Fair Dismissal Act of Georgia and Title VI/VII federal laws..Plaintiffs also shows this Honorable Court that some of the adverse employment actions taken against her required hearings prior to the action taken. Plaintiff repeatedly requested these hearings to be held via certified mail and e-mail which was both legal documents and did not waive any rights but subsequently denied due process under Georgia Constitution 83 and 85 along with violations of her 4th, 5th, 6th and 14th amendment rights respectively. The actions of the Supervisors were allowed and inflicted upon plaintiff intentionally, willfully, and with malice with the sole purpose to intimidate, destroy, slander and defame character and terminate plaintiff for filing external complaints of discrimination against a former employer and filing complaints against the Hancock Board of Education. Plaintiff further shows that the overt and blatant retaliation against her was also politically motivated by all family members and close friends that caucus politically with this family whom in which have mainly been in political power in Hancock County for at least the last two decades which is a direct violation of plaintiff's First Amendment rights, freedom of expression and freedom of speech and directly violates the Georgia Legislative Expressed Intent in the Fair Dismissal Act which is purposed to prevent termination of Georgia teachers for personal and political reasons.

## FACTUAL BASIS

Plaintiff was hired by the above employer in January 2007, as a Teacher in M.E. Lewis Elementary School, "Lewis". During her tenure she was subjected to racial discrimination,

2

hostile work environment, harassment , severe and pervasive retaliation, disparate treatment and other adverse actions which affected the terms and conditions of her employment. Plaintiff suffered severely for filing racial complaints against another school system. Plaintiffs former Superintendant and principal from the first school system have both had their license revoked and have been charged with four counts of RICO act violations, state testing violations, bribery and both had their homes searched by various Law Enforcement Agencies and charged with all types of other unethical violations. The record shows that plaintiff filed complaints with the Department of Education, Office of Civil Rights against previous and current Boards of Education members. Plaintiff was also discriminated against by denying her all access to internal grievance procedures and for participating in discrimination charges made by another employee who named plaintiff as witness and for exercising my due process rights.

4.

This adverse action resulted in defamation of character, bullying in the workplace by other employees especially those that were seeking favor and promotion.

5.

Plaintiff made several internal and external complaints of discrimination and retaliation with the Board of Education and was denied an opportunity to be heard in violation of local board, state policy and Georgia State and federal law. After many failed attempts to be heard, plaintiff filed external complaints with The Department of D, Office of Civil Rights with one case under review with appeal to the Deputy Assistant Secretary for Enforcement. (Complaint number 04-11-1061).

6

The records shows precisely with proximate cause that each time plaintiff complained internally and or externally she was subjected to false write-ups with fraudently content and unfounded investigations, unlawful suspensions with or without pay, assault, and falsified documents published in her file. The adverse action resulted in a loss of liberty, pursuit of happiness and defamation of character and as an educator, the false charged which are void which continue to be outstanding after five years and is done intentionally and purposefully

3

and has caused plaintiff almost three years of collateral damage when indeed the officers presented complete falsehood to secure the arrest warrants and was done with malice which was and is the object of the open criminal case and has left plaintiffs with a harder task to become gainfully employed. And also plaintiff experienced a diminished in health which has resulted to repeated doctor's visits for illnesses related to undue stress.

7.

Plaintiff further shows that she was discriminated against while and during the time that she was under FMLA.

8.

Plaintiff further alleges to this Honorable Court that her Employer was intentional negligence, culpable negligence, collateral negligence, contributory negligence and concurrently negligence in carrying out non discretionary duties owed to plaintiff while in the Employer, Hancock County Board of Educations Care.

9.

Plaintiff further shows through a preponderance of evidence and actual proof to this Honorable court that her "Supervisors" engaged in wanton behavior by recklessly and with total disregard repeatedly falsified documents and placing them in her file without her Employer giving her and opportunity to address the letters or open the letters and explain the letters. The calculated plan of the Supervisors were a pattern of harassment that plaintiff Superintendent engaged in which were actually fraud which led to plaintiff's wrongful termination. The Georgia Law and Federal law requires that Employers

10.

Plaintiff further shows this court that Defendants willfully and intentionally violated ALL due process rights and safeguards guaranteed to her prior to her dismissal outlined in as plaintiff has expected continuous employment in her job as a tenured teacher. Plaintiffs further shows that ALL due process rights were violated pursuant O.C.G.A. 20-2-940 et. Seq."The Fair Dismissal Act".

11.

4

Plaintiffs further shows this Honorable Court that All of the defendants are closely connected through political, religious, and family which also makes their malice against plaintiff a Hate Crime according to federal law which .Plaintiff further shows this court that defendants engaged in wanton reckless behavior through a continuous pattern of Gross misconduct of duty and gross negligence of duty. Plaintiff further show this honorable court that Defendant, former Superintendent Leslie gave her directives during the interview not to interact with Dr. Evans son at all and both Dr. Leslie and Human resource Director stated to plaintiff that they were aware of the alleged family hatred of plaintiff and her family which include the Ingram's and Evans whom are (first cousins-close relatives) that are and have been in political power for at least two decades in Hancock County and also have political reach in the Public School System.

## COUNT I.
## RETALAITION THROUGH THE USE OF GROSS NEGLECT OF DUTY BY THEN HUMAN RESOURCE DIRECTOR

12.

During the School Year of 2007, during the month of March, Plaintiff received a letter stating that her certificate would not be renewed due to required lack of training in the computer Literacy class. Plaintiff responded with proof of the class taken with former employer.

13.

During the month of March of the same school term plaintiff submitted all requirements to human resource director with request to renew Certification which was scheduled to expire on June 30, 2007. Prior to submission, plaintiff secured required developmental training courses from Human Resources who stated to plaintiff that the information was already requested and sent to current employer and to be careful and watch her certificate because

14.

Foul play was suspect due to the type of questions being asked from plaintiff new employers Human Resource Director.

5

15.

The record shows that Human resource Director, failed to upload the information to have Plaintiffs Certificate renewed. After bringing this to the attention of the Superintendent on or around June 28, 2007, the record shows that human resource Director resigned after being given a directive to upload the certificate.White Human Resource Director rescinded her resignation which was accepted by a majority of the Board members the next week after another employee was designated the responsibility.

16.

Absent of reason, the record showed that the human resource director had enter the computer and made several inquires with Professional Standard Commissions in reference to the certificate of plaintiff even on the day she resigned. Such inquiries were ethic violations which there were none. This adverse action of gross negligence which was also overt and blatant would have caused irreparable damage and harm to plaintiffs career and retesting for plaintiff would have been the results.

## COUNT II.
## SIMPLEBATTERY/ASSAULT COMMITTED AGAINST PLAINTIFF BY HER ASSISTANT PRINCIPAL.

17.

On or around November 5, 2007, Assistant Principal came into plaintiff classroom at the end of the period and observes five minutes of instruction which was basically closing and dismissal.

18.

After about five minutes into the next period class Assistant Principal Evans left the classroom and later asked me about my lesson. I could not follow her questions and therefore asked the Principal for clarity.

19.

6

During appellants conference in the principal's office, assistant principal violently entered the office and begin screaming at plaintiff and pointing her fingers in plaintiff face. Plaintiff removed herself from the office and Assistant principal followed her to the door violently and begin swinging her hands across at plaintiff until the Principal threw hands across the door and in a raised voice she told Dr. Evans that she was out of control. She also had a mentee student with her and she likewise jumped in with her against plaintiff.

20.

On or around November 7, 2007, Dr. Leslie, then Superintendent scheduled meeting with plaintiff to punish plaintiff. However, plaintiff asked for a meeting with the Board members and asked for open records of the witnesses and Superintendent responded with witnesses. On or around November 8, 2007, the community took up the fight with the Board members during citizen participation opposing the unprofessional behavior of the Assistant principal the Actions of the Assistant principal. Shortly thereafter, the principal admitted the truth to the Superintendent.

21.

The record shows that for the next two years and few months she scheduled meetings with principal to bring about discipline to the Assistant principal and the administration refused to hear plaintiff's complaint. The hostile environment was maintained via inaction from administration and therefore the adverse employment actions and hostile work environment became severe and pervasive.

22.

The record further shows that on February 3, 2010 was plaintiff last and final attempt with the previous administration to intervene and schedule the required hearings and meetings. Former Superintendent would schedule the meetings and then cancel them or not follow through with the subsequent meetings which would include the Assistant principal and principal. During this time defendant asked the principal to write plaintiff up and threaten Principal that if not she would write her up. Once again several witnesses stated to defendant

7

then superintendent that plaintiff did not do anything wrong and in addition the cafeteria manger spoke to one of the Board members about what her staff witnessed and quash the potential harm that was being planned against plaintiff.

## COUNT III
## RETALIATION AND DIFFERENTIAL TREATMENT

### 23.

On March 3, 2010, the record shows that plaintiff was administering the Fifth grade State writing exam to her homeroom class which ended at 12:15pm which is one month later proximate cause, arbitrarily and capriciously and capriciously a disruption occurred in plaintiff's class of all the five fifth grade classes.

### 24.

At approximately 11:55, testing Coordinator, Ms. Ingram, entered plaintiff classroom to collect the test. Ms. Ingram begin taking up test and calling plaintiff names such as "crazy". Plaintiff shows that this honorable court that there had been three reported incidents prior to this testing incident reported to authorities by plaintiff pursuant testing with plaintiff. One incident witnessed by Superintendent Reeves she proctored in plaintiff's class and the incident is documented. One incident shared with the principal pertaining to a student's answer sheet which the first ten answers were changed from right to wrong and was done so after plaintiff collected the test and submitted the test. Finally, under the same testing coordinator, plaintiff shows that her students writing scores which was 100 percent passing came back in another teacher's name from the state department

### 25.

Upon entry into plaintiff, Defendant was very irate and appeared to be angry about the testing being very unorganized and resulted in many teachers beginning the test extremely late after the test time. However, the fundamental question is why Mrs. Ingram entered plaintiff class when all test had to begin and ended at the same time law.

### 26.

The record shows that plaintiff began to test students on time and was directly on schedule and therefore pleaded with defendant to get the principal involved if she felt as if a violation occurred.

27.

Defendant began snatching test from the students and frightened the students and some began to cry as she elbowed the students and as she snatched the test.

28.

Plaintiff followed the emergency preparedness plan accuracy and exactness. The record shows that plaintiff called the office three times to get administration to her class. The record further shows that Plaintiffs students and proctor called the front office as well and to no avail.

29.

The record further shows that Plaintiff called 911 because of the student's terror and because of a recent indictment of the counselor for allegedly burning down her home.

30.

The record shows that prior to the police responding, and then Associate Superintendent arrived first from the county office which was at least three miles away from the school. Associate Superintendent was upset that with plaintiff already pursuant her brother who was a sitting board member whom in which plaintiff was opposing and endorsing his opponent in the upcoming election.

31.

The record shows that plaintiff was harassed by the police and escorted through the building while she was the victim and made the 911 call. The record shows that testing coordinator was allowed to walk out of the back door and was never looked for or questioned. She married the Sheriffs and many of the deputies' relatives. Although plaintiff was the victim, she was treated as the criminal.

9

32

Plaintiff further shows that she was suspended without pay by the Associate Superintendent against the principal will who in which she overstepped her boundaries to do so. The record shows that the principal repeatedly tried to call the Superintendent because she knew that they could not suspend me. The former Associate Superintendent violated my due process rights, both 5th and 14th respectively when she usurped the authority of the Board of Education powers to suspend and in addition violated plaintiff due process rights as they are afforded to her in the Fair Dismissal Act pursuant *O.C.G.A 20-2-940g.*

33.

Plaintiff shows that she attended the regular Board of Education meeting and parents were outraged and upset at the actions of the Board to remove her from the classroom and expressed their concerns. Also, the Board of Education and plaintiff learned through the outraged parents that then Superintendent Leslie falsified documents and sent to the entire fifth grade class of about One hundred students slandering the names of plaintiff by stating that the students had five minutes left during testing and the testing environment was only compromised for five minutes. The record shows that the parents of seventy five students were upset because this did not concern them or their child. Also, activists in the community questioned the integrity of Dr. Leslie by asking her "How did she know" and the 911 tape revealed otherwise and why did she send the letter.

34.

The record shows that on or around March 10, 2010, plaintiff notified the Superintendent and the Board of Education members that her rights had been violated. It was at this point that then Superintendent Leslie changed the suspension to administrative leave with pay pending investigation.

35.

The record further shows that on March 22, 2010 via certified mail, plaintiff requested a hearing from the board of education pursuant *OCGA 20-2-940g* as required by law because ten days had expired. Plaintiff request was completely ignored.

36.

Further, plaintiff shows this Honorable Court that on March 26, 2010, defendant completed her investigation and handed down her discipline. Plaintiff responded and flatly refused to accept the disciplinary sanctions of the Superintendent and asked to proceed before the Board of Education as required by law.

37.

The record shows that for the next month from March 26, 2010 until plaintiff returned to work their were several dialogues with then Boards attorney Mr. Dishman who was not suppose to intervene with teachers prematurely but was assigned to me to speak with. After refusing the discipline offered because it was unwarranted, baseless, and an overbroad for plaintiff who was on task and in her class doing her job; Plaintiff repeatedly asked for a hearing but was threaten with termination if she proceeds. Plaintiff continued to insist on a hearing.

37.

The record shows that finally after two or three phone conferences with the attorney, plaintiff was told that she was not having a hearing and was to return back to the job on or around April 27, 2010 and that both teachers disciplines would be reduced to ten days only.

38.

The record shows that defendant, although according to Georgia State Testing Rules Professional Standards and the State Board of Education which states in pertinent part that once the test is signed out by the teacher and counted, the teacher has to return the test documents and count them back in and signed for their process and return. The state testing rules strictly stated that if there is a disturbance or disagreement during state testing the

11

principal should be notified to handle the problem and the record shows that plaintiff followed protocol exactly.

39.

During the month of July of year 2010, plaintiff learned through the audit report that her pay was the only pay taken and not defendant. Plaintiff scheduled a hearing to inquire and it was confirmed that it was true. Plaintiff then asked that her money be returned and stated to the superintendent that she was treated differently because she complained and she was in her classroom doing her job prior to the disruption. Plaintiff inquired about the disparate treatment. Superintendent Leslie stated that she would correct the matter and to no avail.

40.

Upon Plaintiff's return back to work in August, the record shows that she was arbitrarily and capriciously transferred to the High School which was disallowed by the School Boards attorney because it was continued retaliation and plaintiff did not have the certification to teach high school and was a direct set up for failure. The record shows the relentless behavior of the Superintendent which placed plaintiff in High School to teach during the next summer.

41.

During the same year, plaintiffs shows this Honorable court that she attempted for the next six months to get an audience with her employer, the Hancock County Board of Education and was repeatedly denied to address local controversy and discrimination along with a hostile environment.

## COUNT IV:
## RETALIATION FOR REPORTING WASTE, FRAUD, AND ABUSE IN THE WORKPLACE IN VIOLATION OF THE GEORGIA WHISTLEBLOWER ACT

42.

12

School reopened in August of 2010 and retaliation and the hostile work environment intensified. SRO officer Glenn Ingram began to follow plaintiff around town and tried to have her removed from the Courthouse during the run off election, threatening and intimidating Plaintiff constantly following and stalking plaintiff in his city police car. Witness will testify that they had to come and follow plaintiff home to safety and or remain on the phone while she returned home.

43.

In October 2010, Plaintiff agreed to testify in a Hearing before the board of education for another employer who was discriminated against with his pay taken and others that violated the same offense received no discipline at all.

44.

In October 2010 plaintiff participated in an State Election investigation at the request of the investigators and this testimony involved Judge Rice and SRO officer/City police Officer Glenn Ingram.

45.

In October 2010, the record shows that plaintiff also helped with the campaign to install an election board to eliminate the election Fraud which appears to have been the primary reason for the stagnation in Hancock County.

46.

On October 1, 2010, the record shows that plaintiff filed complaints pursuant to what she believed was political reprisal being instituted on her job. Plaintiff also stated she was being threatened by comments made to her by Coach Morris telling her to watch her back and advised plaintiff that Uncle Melvin had been good to everyone and plaintiff would be gone before he leaves in December. Coach Morris is the nephew of Board member Melvin Smith who lost the election and is the brother of Associate Superintendent Richardson through by

13

marriage and lives next door to them. (In the upcoming Count Coach Morris did not pick up the students as scheduled without notice to plaintiff).

### 47.

In October 7, 2010, the record shows that plaintiff filed charges against Ms. Behne, Ms. Spike and Dr. Evans for continued discrimination in the workplace.

### 48.

On or around October 28, 2010, plaintiff spoke to former Superintendent about what appeared to be waste, abuse and fraud committed in the 21st century program by defendant and the SRO officers. In addition Plaintiff reported the much unorganized manner in which 21st century was being implemented at M. E. Lewis Elementary School under the leadership of the assistant principal leadership. It also appeared that defendants were working in the 21st century program and on the clock in the city during the same time.

### 49.

The record shows that on or around mid to the end of October plaintiff was finally stopped by the SRO Officer who continued to follow her but harassment intensified after the above stated October events.

### 50.

The record further shows that plaintiff reported the behavior to Board member Ms. Clayton because the Superintendent did not act on the report. In addition, the record shows that plaintiff further complained in September and October to the Officer brother-in-law, Chief of police and to another brother-in-law the Mayor of the city of Sparta, and finally to two City councilman.

### 51.

14

The record shows that one City Councilman intervened with questioning and then with P.O.S.T after severe retaliation occurred against plaintiff for filing her complaints.

## COUNT V:

## FALSE ARREST, KIDNAPPING, MALICIOUS PROSECUTION, RETALIATION, ASSAULT, AND TRESPASSING in violation of filing internal and external discrimination complaints.

### 52.

On November 11, 2010 plaintiff shows this court through a preponderance of evidence that she followed a directive previously given to her by her principal to send a student to the office for a standard appointment if detected at all that he had not had his medicine. The record also shows that a procedure was implemented with the directive. Plaintiff was directed to send the student to the office and then call to check on his arrival and visit to the nurse and the office personnel suppose to call back to report his return back to me and verify his visit to the nurse. Although the record shows that this was a standard appointment, it was rarely used because the student usually visits the nurse immediately after breakfast.

### 53.

The record shows that the plaintiffs recognized symptoms that the student had not taken his medicine and therefore called him to the outside corridor and question him in reference thereto. The student replied that he ha gone to see the nurse but was unable to see her because he was told she was not there. The record further shows that the student arrived to plaintiff's class on or around 7:30am prior to the 8:00am scheduled arrival time accompanied by a mentor student who also verified that he went to the office with the student prior to coming to plaintiffs class.

### 54.

15

Plaintiffs show this court that she received the students into class and asked that they both read until the other students arrived.

55.

Class began around 8:00 and ended around 9:00am and the student interrupted the class repeatedly by blurting out answers during a review game. Many students became frustrated.

56.

The record shows that plaintiff allowed several minutes for the students to change class and Coach Morris who had just stated to plaintiff to "watch her back" did not pick up the students as the scheduled and neither did plaintiff receive a notice from administration. The next period supposed to have been plaintiffs planning period, but instead a teacher on her team enjoyed plaintiff planning period.

57.

The record further shows that around 9:20AM Plaintiff called student outside of the classroom and asked him had he seen the nurse and he explained that he tried to along with his mentor student whom I later inquired as to whether they went to the office.

58.

Plaintiff further shows this court that about three minutes later, allowing the student enough time to arrive to the office as directed by her Principal and reiterated by the students parents; plaintiff called the office and checked on her student.

59.

The record shows that secretary Spikes stated to plaintiff that she had called the police and that he was acting out of control in the office.

60.

The record shows that plaintiff asked the secretary had he seen the nurse and if so send him back to plaintiff's class and tell the officers that he was with her.

61.

The record shows that the secretary responded exactly, "I don't know where he is, he ran out of here."

62.

The record shows that plaintiff's co-teacher whom arrived late went to look for him and located him in the restroom adjacent to the classroom. The record shows that co-teacher Barnes also stated to plaintiff that the officers were approaching the corridor.

63.

The record shows that the hall is at least about seventy feet from the office. The record shows via witness testimony and plaintiff's testimony of personal knowledge that plaintiff spoke with the student whom was extremely frightened and stated to him that he was to return to the office and explain his situation with his medical dilemma and maybe they would understand. Also student was advised to apologize to the secretary and officers.

64.

The student appeared too afraid to walk alone and therefore plaintiff, his teacher walked him at least thirty-five feet down the corridor to meet the officers (half way). The record shows that the officers never made it to plaintiff classroom.

17

65.

The SRO's asked plaintiff to join them in the conference room with the secretary and to give a statement pursuant what happened. Plaintiff followed the officers to the office.

66.

Prior to entering the office plaintiff asked the Human Resource Officer, Ms Tina Behne, to accompany her into the conference room. Ms. Behne did not immediately come in to the room.

67.

Instantly, without any incident or speaking, when plaintiff entered the conference room, Defendants went into provocation and told plaintiff she needs to leave the school. Although plaintiff was stunned she said okay and asked why and before she could answer Officer Ingram, jumped up over plaintiff, pointed his finger into her face and shouted , You're are not going to point your finger in my face". Plaintiff removed herself from her seat and said NO SIR and explained that she was speaking with her hands and then removed herself from her seat and placed her hands behind her on the wall.

68.

Plaintiff shows this Honorable Court that once plaintiff stood up on the wall, she saw then former Board Chair and asked him to accompany her into the meeting and he declined. both former Board Chair and Human resource Director knew of the history of the family hate that existed for plaintiff by the political family which includes SRO officers, their sister, Assistant principal and first cousin defendants Board Chair and relative district 4 Board member who are all relatives to each other and held until recently the majority of the political positions in Hancock County.

18

69.

The record shows that plaintiff re-entered the conference room and stated to the officers that "you did not come for me and I am leaving". It was at this juncture that defendant who never left the circulation desk entered the office and checked on the student and asked had he had his medicine and closed the meeting. The officers were upset because they cold not provoke plaintiff to enter an argument with them.

70.

The record shows that the student and plaintiff left the office at about 9:52am and returned to the class and Plaintiff and co-teacher returned to the office about 9:56 to report to Human resource officer what actually happened and she had left.

71.

The record shows that both teachers returned to the classroom and change classes on time at 10:00am. The record shows that plaintiff was only with the officers for about six or seven minutes at the most and maybe another two minutes with the Human Resource Officer.

72.

The problem was presumably resolved because the Officers who came to get the student told the student to remain seated outside of the conference room in the front office, and refused his apology offered at the close of the meeting.

73.

On November 11, 2010, at approximately 3:00pm while waiting for tutorial students, plaintiff saw SRO officers and their sister, assistant principal remove student from tutorial and place him in the police car and took him off campus.

74.

Plaintiff went to the office to inquire about her tutorial students and to report that she would not be staying in after school tutorial today if approved by Dr. Evans who was in charge of the program. Plaintiff was approved to leave. Upon leaving the office plaintiff inquired about the student leaving and Dr. Evans said that Dr. Leslie, then Superintendent ordered him off campus.

75.

The record shows that plaintiff asked the student's final period teacher why he was transported home and she replied that she released him to tutorial and he was looking forward to tutorial. She also told me where he lived. Plaintiff went to the home of former district 4 board member home and reported that the student was taken out of tutorial and she then in return called former Superintendent to inquire.

76.

On November 11, 2010, former Superintendent replied by stating that she had conducted an investigation and she had taken statements and that plaintiff had the student out of class all over the place and assured Board member Clayton that she had recorded the student and took other statements from witnesses and had everything on tape. With proximate cause, less those days after filing complaints against Officer Ingram and one month after filing discrimination charges against administration including the secretary, Warrants and arrest based on unfounded charges were issue against plaintiff. The record further shows that plaintiff was present at work during her investigation and she took statements and did not interview or question plaintiff which was required due to the stigmatizing, slanderous, defaming nature of an arrest.

77.

The record shows that Board member called the Superintendent back and scheduled to meet with her to hear the tape on the following Friday morning and after several failed

20

appointments to hear the tape, Ms. Clayton said to forget it and that she did not want to hear a one sided story. Ms. Clayton was first told that the equipment did not work and other stories about the tape.

78.

The record shows that Plaintiff answered the phone when former Superintendent called back to board meeting Board member Clayton home and tried to convince her not to come and hear the tape. Defendant became extremely angry with plaintiff at about 3:00p.m.called her a serious name and hung up the phone.

79.

The plaintiff further shows through written testimony of the Secretary of the High School that the former Superintendent asked that she locate and send the officers to her office immediately and this request was made at approximately 3:05 (proximate cause for retaliation) and asked that they come to her office right away.

80.

The record also shows that through High School secretary witness statement that the officers returned immediately to her office and stated to her directly that they had to process a teacher and that they had to leave.

81.

The high school secretary later called plaintiff on November 16, 2010 and stated to plaintiff that she had heard that she was arrested and wanted to know if it was true and that I was the teacher the officers were speaking about on the previous Thursday and that she was the only teacher that this has ever happened to before and stated that it was planned.

82.

21

The record shows that Boar member, Mrs. Clayton kept her scheduled appointment of 9:00am November 12, 2010, to view the tape and there was no tape in existence, and subsequent appointments were given to her for her to listen and the tape never surfaced.

83.

The plaintiff further shows that the former Superintendent of Schools, Dr. Leslie called her and asked for the officer and she sent them to her office. She stated that

84.

The record further shows that Plaintiff, escorted by students Godmother to the home of the student to speak to his mother. The student mother reported that he was removed from tutorial to keep plaintiff from speaking to him about the investigation that Dr. Leslie, Principal Birdsong, Assistant Principal, Dr. Evans and SRO officers had engaged with the student. Student's mother became angry and banned him from that type of interrogation without her presence. Further the parent allowed her Student to travel with plaintiff to the home of Board member Clayton home to tell what happen. He was not questioned at all about the morning events which was his medicine and disruption in the office, but seriously interrogated about Plaintiff hitting the student which he never made a complaint at all his parent which shows that the school district and SRO officers were looking and probing for any information which would formulate an arrest. In addition, the student was not punished at all for his behavior.

85.

On November 12, 2010, plaintiff did not go to work. The record shows that Investigator Brown came to plaintiff's home and she missed him. Plaintiff called the officer and he did not answer or returned her call. Plaintiff was told by Board of Education member that at the meeting it was stated that the officers had two warrants on plaintiff. The Board of Education of Hancock had a called meeting on November 12, 2010.

86.

The record shows that plaintiff tried to find out all weekend about the warrants and no deputy would answer or they did not see any warrants for plaintiff on the book to be served.

87.

On November 15, 2010, Investigator Brown came to the home of Plaintiff without warrants and spoke with her family to have her to turn herself in. Plaintiff was under doctor's care for her conscious was shocked at the level of corruption and fraud which generated irreparable harm. Investigator threatened plaintiff with harsh punishment if she did not turn herself in to authorities and that he was not authorized to show her warrants or read to her any Miranda rights. Plaintiff first refused until threatened, he said that a deputy was coming to get her and then stated that he would come. Investigator Brown showed up and was not in a police uniform or in a police car but asked plaintiff to meet him at a corner store and follow him to the police station. He stated that this was "bulls...t" and this should be handled in the school and this is intended to humiliate you. Plaintiff asked for the warrants again and there was none available. Plaintiff turned herself in followed by the investigator and was booked into jail and locked up for hours for reasons unknown to her and then released on her own recognizant.

88.

During plaintiffs stay in jail, the record shows that SRO officer Ingram came to the jail and laughed at plaintiff which is a showing of actual malice. The record further shows that on or around mid April, 2011, plaintiff inquired about the SRO officers status and training and learned that the warrants were still in the magistrate office. Immediately after the inquiry by plaintiff, the orders were illegally transferred to the Superior Court absent of any and all Due process for appellant.

89.

The record shows that on November 15, 2010, Plaintiff doctor immediately responded with FMLA and disallowed plaintiff to return to work.

90.

23

Plaintiff asked the Sherriff for the Warrants and her sister went to retrieve the warrants. The warrants were VOID Orders and the signing thereof by a non detached non neutral impartial judge was illegal. Also, the magistrate judge that signed the warrants violated plaintiffs 4the, 5th, and 14th due process rights intentionally and willfully in collusion with the local politicians and Board members which was all political motivated and intimidation for reporting incidents that were of great public concern.

91.

Plaintiff shows this Honorable Court that O.C.G. A. 17-4-40 makes it clear and state in pertinent part who may sign a warrant for a teacher who is in the official capacity of duty. In this instance case defendants knowingly and maliciously avoided the process to deny plaintiff of due process and to cause permanent damage to career and for plaintiff to take collateral damage.

92.

Plaintiffs shows this court that the statutory requirement founded in O.C.G.A 17-4-40 for Superior Courts Judges to sign the warrants of teachers is also founded in the Georgia legislative intent House Bill 199 pursuant OCGA 17-4-40 which states in pertinent part that the intent is "so as to provide judicial discretion for the provision of notice and a hearing for consideration of warrant application made without probable cause.

93.

Any reasonable Superior court Judge would have seen from the police report that probable cause did not exist. For the record states that the officers came to plaintiff classroom to remove the student and plaintiff ran back in her classroom and yelled that "if the police remove him from campus, I will call Dr. Leslie." The record shows through twenty-five student witnesses and teachers witness statements that the plaintiff met the officers halfway down the hall and delivered the student to the officers. The police never came to plaintiff classroom.

24

94.

The record shows that if required due process hearing was held with plaintiff as the Georgia legislative intent found in HB 199 any reasonable superior court judge would have seen that the police report stated that defendants took thirty minutes to calm plaintiff down and in contrast, the plaintiff was only with the defendants but for five to seven minutes.

95.

In addition any reasonable judge would have known that defendant falsified evidence because they allowed plaintiff to remain on her job all day with students, co-teachers, janitors, and cooks and all other personnel that could have been injured. The record shows that the arrest was politically motivated and retaliation for filing a former complaint against the officers and their sister Dr. Evans.

96.

Plaintiffs shows this court that O.C.G.A 15-4-1 makes it clear to the magistrate that such warrant should be bound over by the magistrate judge if subject matter jurisdiction does not exist prior to any action at all.

97.

Therefore the magistrate judge did not have subject matter jurisdiction over the person or jurisdiction while teacher (plaintiff was performing the official capacity of her duties).

98.

Plaintiff further shows this honorable court that O.C.G.A. 17-9-4 states that orders signed by a judge not having jurisdiction is invalid and have no legal force or effect which is in compliance with the U.S. Supreme Court decisions and on State Supreme Court decision.

99.

Void orders are void abnitio and is void before reversal and renders the judgments made without subject matter jurisdiction back to the place before the proceeding existed.

Valley v. Northern Fire & Marine Ins. Co. They are not voidable, but simply void. Chapman v. Talifero.

100.

Appellant further shows this Honorable court that a void judgment can be raised in any court at any time and in any proceeding and is therefore being raised in this complaint filed in the Superior Courts. A Judge has a legal duty to dismiss Void Orders. In addition there is no statue of limitation to challenge subject matter jurisdiction.

101.

Plaintiff further show this court that all proceedings founded on a void order is void themselves and is invalid. 30 Am Jur Judgments "44,45 and also an inspection of the record shows that void orders cannot be framed on void orders.

102.

Void judgments are those judgments rendered by a court that lacked jurisdiction over the persons or subject matter and the record in this instant case shows that the orders signed by the magistrate court judge is void and in its inception is void and will forever be void.

102.

Plaintiff further find that defendants engaged in violation of kidnapping and Trespassing and the malicious prosecution of Plaintiff.

103.

Plaintiff further alleges to this court that not only was appointed judge violated her constitutional rights 4th, 5th, 14th, respectively when they signed the warrants (order) the record shows that he is a not an impartial neutral judge and he does not live in Hancock County which is required under the Georgia Constitution Article VI, section VII, paragraph II, part D to live in the geographical area therefore probable cause was never establish even by the standards of the U.S. Supreme court which has held that the record shows that the judge that signed the void orders lives in Sandersville, Georgia via homestead exemption and voting

26

record prior to signing the warrants. The warrants contain phrasing "hearing held" and there were no hearing held and also there is no arresting officer listed on the orders.

104.

The issue before this Honorable Court is whether an arrestee in the appellant's position may be entitled to relief is found at Riverside v. Mclaughlin, 500 U.S. at 48-50(I), 111 S. Ct. 1661 that recognizes that an arrestee suffers a personal injury that may be actionable as a civil rights violation of the constitutional requirement of a prompt probable cause determination also found in French v. State which, 99 Ga. App. 149, 151(5), 107 S.E. 2d 890 (1959) which states in pertinent part that ("an arresting officer may be liable in damages for false arrest and imprisonment where he detains the defendant in an illegal manner").

## COUNT VI
## Retaliation InViolation of the "Family Medical Leave Act."

105.

Plaintiff shows this honorable Court that her doctor placed her on Family medical Leave due to the emotional, physical, and mental problems that were associated with the arrest on Monday, November 15, 2011. This information was communicated to former principal and application via Human resource support personnel who was in human resources during that time and secured the intake of the paperwork. See Exhibit     The Legislative Act makes it clear that no further adverse employment action can be taken against an employee after it is made known to the employer that the Employee has been lawfully given medical leave by the doctor that she can no longer work for a prescribed period of time. Retaliation is not to occur for the placement thereof.

106.

27

On November 19, 2010 after all communication of FML had been made by plaintiff and doctor, Superintendent Leslie placed plaintiff on Administrative leave pending investigation, thus taking adverse action against her employment. The notice was received on November 19, 2010 and dated November 15, 2010. Defendants were notified on November 15, 2010.

107.

The record shows that former Superintendent investigated the matter which led to plaintiffs arrest on November 11, 2010 at 3:00pm after returning from a workshop. The record also shows that Defendant violated plaintiff due process rights by investigating a school matter between employees and student and failed to take statements from the teacher of the student but from witnesses that complaints were filed against as recent as October 7, 2010 and the receipt of notice that plaintiff was identified as a witness in a discrimination complaint on or around November 3, 2010 which shows proximate cause especially in light of the fact that plaintiff also reported the officers in October 2010, their sister, assistant principal for what appeared to waste, abuse and fraud in the 21st century programand participated in September/October 2010 in a state election fraud case which included Officer Ingram and his relatives and other political affiliates in which he caucus with.

## COUNT VII
### Violations of Title VI Civil Rights Act of 1964(Title VI), 42 U.S.C, 2000d, and its implementing regulation, 34 C.F.R. Part 100, Title VI, AND 100.7(e) which prohibits retaliation against an individual who file a charge of discrimination by recipients of Federal Financial assistance including previous employers or current employers, participating in an investigation, or opposing discrimination practices. In addition, violations of Title VII of the Civil Rights Act as amended which includes retaliation against an employee for filing complaints of discrimination against former or current Employers or participating in a charge of discrimination. Plaintiff rights was violated for filing a complaint of discrimination and continuous action from 2007 until 2012 was taken with new employer, retaliated against for filing internal grievances and denied ALL due process to address the discrimination complaint therefore, plaintiff employer allowed her to work in an abusive, pervasive hostile work environment.

28

There are three essential elements of retaliation: 1.) opposition to discrimination or participation in covered proceeding, 2.) adverse action and 3.) Casual connection (proximate cause) or causation between the protected activity and the adverse action.

### 108.

The U.S. Supreme Court has made it clear that Superior courts (State Courts) are invested with concurrent power to hear Title VII harassment and retaliation cases evolving from workplace discrimination. Article IV, Section I provides that the various states must recognize legislative Acts which also include violations of title VI.

### 109.

On November 15, 2010 after being placed on medical leave and after about three years of abuse, maintained hostile environment, and on its face retaliation from filing a previous case from a former employer plaintiff sought resolution pursuant to Title VI 34 C.F.R. 100.7(e). found under. The complaint included Board members for denying due process, former Superintendent and Principal along with Assistant principal and both SRO officers who made the false arrest.

### 110.

The U.S. Department of Education found causation and a nexus between the complaints filed against a previous employer and the continued action of retaliation against plaintiff from her new place of employment. The complaint supposes to be resolved in 180 days but remained opened for 13 months.

### 111.

Hancock County Board of Education maintained a hostile work environment where plaintiff was severely harassed and denied all access to internal grievances and formal grievances. Formal grievances have a direct appeal to the Georgia State Board of Education and cannot be appealed unless heard by the local Board of Education.

29

112.

Plaintiff shows this Honorable Court that for five consecutive years she pleaded for an opportunity to be heard and was constantly retaliated against for asking to be heard and for filing a previous Federal complaint against a previous Employer.

113.

Plaintiff shows this honorable court that she was severely harassed for filing the new complaint and was asked by the new Superintendent.

114.

Plaintiff realleges that the US Department of Education found causation in the allegations made against the defendants and decided to investigate. The record shows that the investigation was opened and the District and Plaintiff receive letter of intent to investigate on or around November 30, 2010 due to the overt, blatant actions of defendant thus far without giving plaintiff any due process and opportunity to be heard at all to address assault, unlawful suspension without pay, and false arrest.

115.

The record shows that on November 10, 2010 prior to any arrest made the superintendent conducted an investigation into the matter and she took statements herself from three witnesses and allowed me to be arrested without taking a statement from plaintiff which was wanton negligence, malicious

116.

On January 1, 2011, four of five newly elected board members were seated. Three of the Board members are relatives, caucus together as political leaders and vote together 100 percent of the time and one was part of the complaint filed on November 15, 2010

117.

On January 11, 2011 Plaintiff notified former Superintendent of School who was then still in the employ of Hancock County Board of Education as Superintendent via certified letter and sent via hand delivered to the seating board members pursuant plaintiff sister directly to the Board members during a January/ February Board meeting which stated that plaintiff was released from medical leave and sent doctor's release forms. Also, in the same letter, plaintiff notified superintendent of her request for a hearing pursuant OCGA 20-2-940 et seq.

118.

The record further shows that plaintiff was denied due process again because hearing request was completely ignored and never held pursuant OCGA 20-2-940g.

119.

The record shows that on January 29, 2011, that former superintendent were terminated and new Superintendent was installed. Former Superintendent alleged that she was terminated because the new Board Members wanted her to terminate me. (Four of the five board members never worked with plaintiff and plaintiff was at that point still off of her job pending investigation despite her request for a hearing which was in violation of plaintiff due process rights.

120.

The record shows that on or around February 9, 2011, the Board of Education voted in the minority to bring plaintiff back to work. This vote was illegal and constituted day to day operation of the schools. There was absolutely no reason for the vote. Plaintiff was removed from her job pending investigation and requested and pleaded for the investigation and the board of education in protection of Board chair relatives, the SRO officers, the request for investigation by plaintiff was declined under the false pretenses that a favor was being done when the Board of Education knew full well that the SRO, who was never questioned as employees were absolutely wrong.

31

121.

On February 11, 2011, plaintiff received a call to meet with Superintendent Reeves and at that time Assistant Superintendent Giles spoke to me repeatedly about dropping the federal charges and there was a new administration and all would be well and different. Plaintiff refused to drop the charges and was asked by the Mrs. Giles what type of settlement she would want and plaintiff responded to conduct the investigation which placed her off of her job and which violated the Family Medical Leave Act.

122.

Plaintiff was allowed to return to work on February 16, 2011, but required to meet with the Superintendent, Assistant Superintendent and Assistant principal before returning to work.

123.

During the meeting, plaintiff received a letter from the Superintendent that she stated the Board of Education members wanted her to give to plaintiff and the letter was a complete fraud and included many allegations that were not true referencing plaintiff past conduct which did not exist. The record shows that plaintiff was never written up by any past administrator or had any parent complaints and maintained the ultimate of professionalism at all time and maintained the top academic achievement record not only in the district but also at times in the State of Georgia. The record shows that plaintiff only had one concern with an employee and she was removed from her class. Therefore the letter was inappropriate and falsified to set the new beginning of retaliation and to set the stage for the false arrest to be justified.

124.

The record shows that plaintiff appealed the letter pursuant O.C.G.A. 20-2-944 and asked the Board of Education to meet with me in a formal hearing as required by the statue which states in pertinent part that a Superintendent may write a teacher a letter, however, provided that the teacher has a right to appeal at the local and State level.

125.

Plaintiff was denied a right to an opportunity to be heard and to appeal the letter which includes slanderous statements, discrimination by association and falsification of plaintiff's character and employment record. The record further shows that it appears that every appeal by a teacher including termination involving a letter given to a teacher has been reversed by the State Board of Education. Board attorneys and board members are prohibited from the day to day operation of the Schools and is disallowed to interfere and any interference shows and actual bias and premature prejudice against the teacher.

126.

The record shows that Hancock county School Boards attorney wrote plaintiff a letter denying and opposing her request to meet and have a formal hearing to address the blatant retaliation for not dropping the discrimination charges as requested. Unless in a formal setting, the boards attorney represent the district and was therefore barred from interference with teacher.

127.

The record shows that on or around May 20, 2011, Principal Birdsong stated to plaintiff that she had to write her up for being late. She further stated that Mrs. Reeves, Superintendent asked her to write her up. On the same day, seventeen teachers were late and plaintiff asked did she ask to write them up. Plaintiff witnessed their arrival. Title VII also prohibits Employers from coercion of other employees against an employee. Likewise, the Superintendent action was illegal and the record showed that plaintiff called in as required with an emergency. Plaintiff engaged in protected activity and the others that came in much later and was similar situated did not complain.

128.

On August 3, 2011, upon plaintiff return back to work, she received a class of 99% underperforming students and behavior challenged students in an effort to set her up for failure. Plaintiff inquired about the illegal placement of the students which is required to be homogeneously placed. The inquiry was for the students only and plaintiff also asked the superintendent for assistant. However the principal agreed with the change and begin to change the student who insisted that the placement was right and exact without a meeting or without any investigation of the student's records. The Academic coach spoke and said that the students were placed in plaintiffs class because they needed the structure and academic support that plaintiff provides for her students and as a result plaintiff accepted the responsibility without any further concerns.

### 130.

On August 30, 2011, the Superintendent, opened an investigation on a situation alleging that a complaint from a janitor had been launched against plaintiff, the record showed that the Principal had resolved the issue, the janitor had not made a complaint and the complaint was made by the Superintendent when she picked the janitor up and wrote the complaint for him thus coercing him to say that plaintiff mishandled him in the presence of the students.

### 131.

On August 31, 2011, the principal from the high school was sent to plaintiff classroom flanked with the SRO officer and commanded that I leave my classroom and stated that he was given a directive to take statements from plaintiff students from the Superintendent.

### 132.

The record shows that plaintiff principal never mention an infraction or a complaint against her. However, the staff and plaintiff saw the pickup of the janitor which appeared to be the superintendent.

34

133.

Plaintiff further shows this Honorable Court that each and every student from plaintiff class stated that the janitor was wrong consistent with the report made by plaintiff. Subsequently, in a meeting held to discuss the results of the student investigation, Superintendent Reeves gave principal whom had never mention a complaint to plaintiff a letter thanking him for doing a great job of investigating the matter. She also told plaintiff that she did not understand what the janitor was speaking of. She issued no punishment to the janitor, she was only looking for an infraction against plaintiff and in her efforts the students consistently disagreed with any unprofessional behavior displayed by plaintiff.

134.

During the months of September and October, plaintiff sought to work amicably and peacefully with the Superintendent and principal to find out what happened and why because the investigation was extremely humiliating with the police presence and another principal from another school. The investigation was also slanderous, parents and co-workers asked what happened throughout the community. In addition, during the same months, Superintendent Reeves stated that she asked plaintiff to come to a meeting and plaintiff never received notification. Plaintiff asked principal Jones and he said the meeting was cancelled. However, in a follow up e-mail deceitfully written to pretend that she was addressing plaintiffs concerns of a hostile environment and named the e-mail "a no show" and that the reason for the meeting was to address concerns of hostile work environment when the subsequent meeting was only to give plaintiff results from the unwarranted investigation she opened.

135.

On October 10, 2011 plaintiff asked that she meet with the Board of education members to resolve the local controversy as pursuant to O.C.G.A 20-2-989 et seq. and was granted to speak at the following November board meeting.

136.

35

The record shows that Mayor of the City of Sparta and Chairperson Mrs. Annie Ingram are relatives and the Mayor of Sparta is the brother of Assistant Principal, Dr. Evans and very close friends of Principal Jones, and also the record shows that plaintiff supported the challenger in the race. The election was over on November 8, 2011 but resulted in a Fraud case involving the immediate family of plaintiff's Principal and involving sister and other close relatives of Dr. Evans, assistant principal of plaintiff and close relatives of two board members and one who caucus politically with the family.

### 137.

The record shows that on November 14, 2011, plaintiff came to the board meeting and was denied an opportunity to speak thus violating Title VII which disallows and employer to prohibit an employee from speaking. The reason given to plaintiff was that she changed her subject which plaintiff did not change her subject and subject was placed in the subject box. Plaintiff was given a call on November 12, 2011, by the Board Chair and asked what the subject was and plaintiff told her the subject. However, arbitrarily and capriciously the subject matter changed and Board chair stated that if plaintiff could prove that her subject was not changed then the Superintendent would be punished. Plaintiffs Supervisors, Superintendent, Principal and Assistant Principal were the subject of the complaint made and discrimination claims.

### 138.

On November 28, 2011, immediate upon plaintiff return from the Thanksgiving break, plaintiff found her room vandalized and went to report it to the principal. Principal was not available and therefore called the superintendent, and after she was not available, sought assistance from the Board Chair who stated to me to report the incident to my grade chair.

### 139.

On November 28, 2011, Plaintiff was called into a meeting which the principal, assistant principal, and Superintendent and was berated for three hours and called names and the Superintendent pivoted the discussion to the meeting with the Board and the record shows

that plaintiff requested three times to leave the meeting and was denied. The superintendent went into open complaint that I had filed and stated that the agencies are not doing anything and that they have not called her and plaintiff was harassed about not reporting to assistant Principal. The meeting also shifted to the election and plaintiff was told that she would be terminated immediately if she campaigned on school property. However the record shows that all of the teachers and staff member that did in fact campaigned on campus were not harassed and the two that did not support the mayor were terminated absent of any cause and were severely harassed. The record shows that plaintiff stated to her administration that another complaint would be filed or old complaint made to reflect the persistent retaliation.

140.

On November 29, 2011, plaintiff reported the behavior of her supervisors to the attorney placed on case to request to amend the case filed on November 15, 2010 and he said that it was too late, but requested the tape anyway.

141.

On November 30, 2011, plaintiff shows this Honorable Court that she filed a new complaint against the new board for the continued action of retaliation. The complaint was filed against the new Board of Education members and plaintiff supervisors. Plaintiff further shows the court that on November 28, 2011 and on November 30, 2011

142.

On December 2, 2011, plaintiff requested a recording of the meeting via open meeting to be sent to the attorney assigned to her previous case. The request was made at approximately 10:00am on December 2, 2011. On December 2, 2011, the three administrators complained of took adverse action against plaintiff and wrote her up, plaintiff receive three letters on December 2, 2011 which were pre-dated for November 28, 29, and 30[th.]

143.

.

Plaintiff shows this Honorable court that she was threaten and intimidated from filing a complaint of discrimination against her Supervisors again on December 12, 2011 as her new meeting was scheduled with the Board of Education, cancelled by plaintiff and then rescheduled on the same day after certain stipulations were met.

144.

On December 8, 2012, the School Board and plaintiff both received their ten day notice of charges at or about 12:00 noon.

145.

On December 8, 2012, without incident, plaintiff was called to the office to receive the report of the vandalism investigation which was closed the next day by Officer Harris. Plaintiff was met in the hall and was deceitfully told that plaintiff received the same packet as the Officer by Principal Jones and was told not to open the packet but listen and not comment.

146.

The record shows that the next day plaintiff reviewed the packet to find fifteen convoluted letters of fraud, untitled, and undated presented given to her by principal which was responses from e-mails that had already been responded to and now with totally different responses and were all completely untrue and were from August tom December 7, 2011 which included the date of notice sent by the Department of Education and copied into plaintiff personnel file and copied to the Board Members who does not legal access to plaintiff file. The proximate cause action was in retaliation for filing a complaint of discrimination and with OCR, U.S. Department of Education and with the intent to prohibit plaintiff from the board of education meeting to address complaint against herself and the local Board of Education along with generating documentation fro the OCR investigation. Plaintiff responded on December 9, 2011 as requested in letter for her to do so.

147.

The record shows that on December 12, 2011, plaintiff attended the Board of Education meeting and was once again denied an opportunity to be heard. On the same day, plaintiff rescheduled the meeting for the next board of education meeting which was for January 9, 2012. Plaintiff ensured the new scheduled meeting before leaving. The record further shows that on December 16, 2011, plaintiff filed an official appeal against letters from Superintendent pursuant O.C.G.G.A 20-2-944 with direct appeal to the SBOE and was denied an opportunity to hear the appeal. Yet the letters that were convoluted and falsified of evidence and the subject of appeal became the exhibits for the non-renewal.

148.

On January 4, 2012,first day upon return to work from the Winter break, plaintiff was delivered two letters by the janitor threatening her employment with termination by Superintendent Reeves done arbitrarily and capriciously absent of any incident.

149.

On January 6, 2012, absent of any incident or communication, arbitrarily and capriciously, superintendent sent plaintiff additional letters threatening her employment and denying her to speak at the Board of Education which the Board of Education approved her to speak. (proximate cause and prohibition to complain)

150.

On January 9, 2012, defendant's attorney wrote a letter again denying plaintiff an opportunity to speak and Principal Jones falsely accused plaintiff for walking out of a faculty meeting and later accusing plaintiff of being disruptive when receiving letters. Plaintiff have

recording of the meeting and will seek to introduce it into evidence. There was absolutely no
disturbance at all. See exhibit. Plaintiff was told by her attorney not to take close content
letters at all and that she was not allowed to participate in discrimination and the letters must
be opened and explain with plaintiff given an opportunity to know what she is doing wrong and
to rebut the content thereof as allowed by Georgia law. Board members stated that plaintiff
was on the agenda and was approved to speak and upon arrival once again denied by
Superintendent who stated openly that the School boards attorney said that plaintiff could not
be heard again and was recorded and heard by all attendees, announcement was made in the
open meeting. (Proximate cause and prohibition to complain)

151.

The record shows that a letter sent to Board of Education members were intercepted by
the Superintendent that plaintiff sent to the Board members only which was a report made on
her supervisors. The superintendent wrote plaintiff up for the letter and sent the letter to
plaintiff closed by janitor and plaintiff at the advice of counsel could not participate in such
discrimination acts disallowed by employer to be heard.

152.

The record shows that on January 27, 2012 OCR, U.S. Department of Education closed
the complaint after investigation and did find the district in error of disparate treatment. OCR
erred in acceptance of the non discrimination reason which the agency stated that plaintiff did
not asked for a hearing on the march 3, 2010 incident.

153.

Plaintiff shows this Court that on February 14, 2012, she sent a letter to her employers.
The letter was intercepted by the Superintendent and plaintiff was threaten with termination
and written up for the sending the letter. The U.S. Supreme Court has held that if the harasser

in the workplace is your Supervisors, then complaint should be made to next level of command. In this instant case, it is clear that the harasser are plaintiffs supervisors. Letter was delivered to plaintiff classroom by janitor and same letter were delivered again by secretary of the Elementary school and both time the letters were closed and unexplained and therefore plaintiff could not accept the letters. Plaintiff could only accept letters delivered by her supervisors, explained and given an opportunity to respond and understand the nature of the letters which all in the past was falsified documents and fraud..

### 154.

Plaintiffs show this Honorable Court that her complaint filed on November 30, 2011 was closed, reopen with EEOC and withdrawn and reopened and closed again generating multiple filings on the behalf of the agency and not plaintiff which was a practice before.

### 155.

Plaintiff shows this court that she likewise filed a complaint in the matter and appealed the complaint of the case opened in November 30, 2010 to Enforcement which was the next level of review. The appeal was accepted on April 2, 2012. See exhibit.

### 156.

Plaintiff further show proximate cause and retaliation for filing an appeal and that the board of education and superintendent wanted her to drop the charges and she refused.

### 157.

On April 26, 2011, absent of any incidents substantiated or heard by employer, principal hand delivered a non renewal notice on school letterhead. (termination-overt employment action)

## COUNT VIII
## Violation VII and Assertion of Vicarious liability

41

158.

Plaintiff shows this honorable Court that her Employer allowed her Supervisors as defined in Vance v. Ball State University., 570 U.S Supreme court ruling in 2013 to continually harass and retaliate against her without any intervention at all, and deliberately disallowed plaintiff access to any and all due process hearings to address the severe discrimination.

159

Plaintiff shows that the Superintendent was encouraged by Board of Education members to do so.. This was contributory malice, and was done with reckless indifference to willfully and intentionally cause irreparable harm to plaintiff's life, liberty and property.

## Count IX

## Violations of the Fair dismissal Georgia Legislative Act pursuant to O.C.G.A. 20-2-940 et seq. and Breach of Contract pursuant to O.C.G.A. 9-3-24, 9-3-26, 9-3-33 and employment contract

160.

Plaintiff shows this court that all due process procedures afforded to her therein were denied and was done purposely and willfully with the intent to prevent plaintiff from having a fair hearing as required by law and as practiced by the Board of Education throughout the Plaintiff alleges the action of the Board subsequently denied plaintiff all of due process rights 2011-2012 school year.

Appellant shows this court that she was a tenured teacher with the Hancock County Board of Education pursuant to **O.C.G.A. 20-2-940.** On April 26, 2012, Principal Charles E. Jones of M.E. Lewis, Sr., Elementary School hand delivered Appellant a purported notice of the intent

to nonrenew her contract with the Hancock County Board of Education for the 2012-2013 school year, and that Appellant's employment with the Hancock County School System will terminate at the conclusion of the school year 2011-2012.

161.

Appellant shows that she requested in writing an explanation for the failure to renew her contract and the hearing as set out in the Fair Dismissal Act. [1]

162.

Appellant requested the compulsory process on June 8, 2012, and was denied that. The purported hearing was held on September 11, 2012, in the absence of Appellant. Appellant was appellant having a medical procedure and the tribunal was privy to this fact as Appellant had made a motion for continuance citing the legal grounds for not being able to appear on September 11, 2012 absent of a hearing date and as early as September 4, 5 and officially on September 6, 2012. Appellant provided to the tribunal a copy of the medical records from her doctor showing that she was incapacitated on

163.

September 11, 2012 prior to the hearing date being rescheduled from their changes made by the Board of Education and would not be able to attend the hearing.

164.

The tribunal, on September 10, 2012, overruled Appellant's motion for continuance and proceeded with the purported hearing in the absence of Appellant. The tribunal made its findings, in Appellant's absence, on September 11, 2012, and recommended to the board the nonrenewal of Appellant's contract. On September 17, 2012, the tribunal submitted to the board of education a transcript of the hearing and the board of education approved the tribunal's recommendation on October 11, 2012.

165.

**Violation #1**

---

[1] O.C.G.A.20-2-940

APPELLANT CONTENDS THAT AS A TENURED TEACHER, WHO HAD ACCEPTED A SCHOOL YEAR CONTRACT FOR THE FOURTH CONSECUTIVE SCHOOL YEAR FROM THE SAME LOCAL BOARD OF EDUCATION, WAS DENIED DUE PROCESS OF LAW WHEN SUCH NOTICE WAS NOT GIVEN BY STATUTORY OR CERTIFIED MAIL OVERNIGHT DELIVERY AS PROVIDED IN SUBSECTION (C) OF CODE SECTION 20-2-940.

The Georgia courts have repeatedly held the O.C.G.A. 20-2-940 are available for tenured teachers, e.g., teachers who have accepted a school year contract for the fourth consecutive school year or more from the same local board of education. See DORSEY V. ATLANTA BD. OF ED., 255 Ga. 104, 105(2002); ATLANTA PUBLIC SCHOOLS V. DIAMOND, 261 Ga. App. 641 (2003). Therefore, Appellant, being a tenured teacher, was entitled to receive the nonrenewal notice by certified mail or statutory overnight delivery. BAKER V. MCINTOSH COUNTY SCHOOL, 264 Ga. App. 510 (2003).

166

Exhibit ---- attached shows that on April 26, 2012, Principal Charles Jones of M.E. Lewis, Sr., Elementary School hand delivered the purported notice of nonrenewal and O.C.G.A. must be construed strictly as in Dee Dee Bergbreiter vs. Rabun County Board of Education, State Board of Education Decision Case number 2012-09. This deprived Appellant of the due process safeguards established in O.C.G.A. 20-2-940 et seq. This impinged upon Appellant's Fourteenth Amendment right that no state shall deprive a person of life, liberty, or property except by due process of law.

167.

Moreover, O.C.G.A. 20-2-943 provides in pertinent part: (a) In exercising its powers in the enforcement of due process under this part, a local board of education shall be authorized: Nonrenew a teacher's contract. O.C.G.A. 20-2-109 provides the local school superintendent shall be the executive officer of the local board of education and the executor of contracts also found in O. C. G. A . 20-2-210-211 Hence, Appellant was further denied due process of law when the principal, not the superintendent, gave the purported notice of nonrenewal, because the superintendent is the executive

officer of the local board of education.  Superintendent Reeves never gave plaintiff a signed copy of nonrenewal as required by law, 20-2-109, supra.

168.

Furthermore, plaintiff shows that School Boards attorney stated the notice of nonrenewal was dated April 26, 2012, provided to her by certified mail from the superintendent. Mr. Hartley is correct on the date of the letter, April 26, 2012; however, clearly shows this purported notice came from Mr. Charles Jones, principal, and it was signed by the principal, and was not sent certified nor statutory overnight delivery. Therefore, Appellant did not receive notice of nonrenewal from her employer, the board of education.

169.

### Violaton #2

### APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE NOTICE DID NOT STATE THE NAME OF THE KNOWN WITNESS AS REQUIRED BY O.C.G.A. 20-2-940(b)(2).

O.C.G.A. 20-2-940 set forth procedure for termination or suspension. In the notice, the board's attorney stated the cause for Appellant's discharge is insubordination and other good and sufficient cause. O.C.G.A. 20-2-940(b)(2) mandates the names of the known witnesses and the concise summary of the evidence to be used against him. The record shows that Plaintiff was not insubordinate and  it is well settled in the Appeal courts and state and federal courts that insubordination is a willful violation of a known policy or rule and any good and sufficient cause is not a catch all  phrase and must attach to another reason for termination as it is determined in  Terry vs. Houston county board of education, 178, Ga. App, 296, 342, S.E.2d 775 (1986) and Cooper, et al, v. Atlanta City Board of Education, Case No. 2005-08 (Ga, SBE, November 2004), and  therefore was denounced by the Department of Labor See DOL unemployment decision.

170.

The concise evidence to be used against Appellant was a letter dated February 16, 2011, from the superintendent, which noted her expectation that all employees would work professionally with their peers and follow the directives of their supervisors. On January 4, 2012, Appellant received

another letter from the superintendent about following directives from her supervisors, following policies of the board of education and conducting herself in a professional manner. That letter was met not only with continued accusations and unprofessional tirades, but with a refusal to accept and sign for receipt of subsequent letters from the superintendent's office and from her principal.

Therefore, the superintendent was a witness and due process mandated the name of this known witness. 20-2-940(b)(2). This notice is void as it did not state the name of the superintendent. JOHNSONV. PULASKI COUNTY BOARD OF EDUCATION, 231 Ga. App. 576.

171.

Violation #4

APPELLANT CONTENDS THE NOTICE DENIED HER DUE PROCESS BECAUSE THE NOTICE FAILED TO GIVE HER SUFFICIENT INFORMATION TO ALLOW HER DEFENSE, AND FAILED TO GIVE HER ENOUGH INFORMATION TO ALLOW HER TO SHOW ERORR THAT MAY EXIST.

This notice failed to give her sufficient information to allow Appellant to defend on or about November 28, 2011, she was provided a letter from her principal once again warning her to use the proper chain of command and protocol to report concerns and specifically noting her unprofessional and rude conduct toward staff during a meeting that had recently been held. This was not enough information to allow Appellant to show error or prepare a defense. The date of the meeting is unknown; therefore, Appellant could not defend this allegation nor show that error might exist.  See JOHNSON V. PULASKI COUNTY BOARD OF EDUCATION, 231 Ga. App. 576.

172

Plaintiff further shows that the notice did not provide enough information for Appellant to prepare a defense nor show error when the notice alleged: In a meeting called to investigate her report of vandalism in her classroom, she was loud, accusatory, unprofessional, rude and inappropriate in comments made to and about other educators and administrators. There is no date, time, nor place of this meeting; therefore, Appellant could not prepare a defense nor show err     The notice did not provide sufficient information for a defense or to show error when it alleged: she accused the curriculum director demanding to inspect answer sheets after the CRCT and screaming at her when she

refused Plaintiff's request. There is not date, time, nor place of this incident to have allowed Appellant to prepare a defense or assign error that might exist.

### 173.

Plaintiff further shows that notice was insufficient by failing to provide sufficient information to Appellant to understand the exact nature of the charge and prepare a defense or assign error that might have exist when the notice stated; she acted in a consistent insubordinate and unprofessional way in addressing school district administrator. The notice never stated the date, time, nor place of this insubordinate and unprofessional manner addressing of the school district administrator, nor did it state how Appellant was insubordinate.

### 174.

### Violation #5
### APPELLANT WAS DENIED DUE PROCESS OF LAW
### WHEN THE NOTICE DID NOT STATE THE TIME AND
### PLACE WHERE THE HEARING THEREON WILL BE HELD.

Plaintiff further shows this court thaton page four of the notice, it provided in pertinent part: Board of Education will be appointing a tribunal consistent with the requirements of the Act and a hearing will be scheduled within at least ten (10) days notice. This denied Appellant due process of law as O.C.G.A. 20-2-940(b)(3), mandates the notice shall state the time, place where the hearing thereon will be held; this notice did not do so.

### 175.

Moreover, when the board scheduled a hearing date on August 2, 2012, but was changed to August 29, 2012, was a violation of Appellant's due process rights and an oxymoron by the board to not give the notice as required by O.C.G.A 20-2-940 et seq.. Furthermore, the hearing was changed from August 29 2012 to an unknown date and changed on or around September 4, 2012 to September 11, 2012, and was a violation of Appellant's due process rights as the law requires the notice shall be given at least ten (10) days where the hearing thereon will be held. O.C.G.A. 20-940(b)(2) and (3). Notice is required to be sent certified mail and sent by the hearing officer or Board of education and not the attorney. Appellant was never notified of any of the changes after receiving a deficient charge notice

absent of required date, time and place of the hearing and was addressed prior to hearing via counsel. See Nigil Smith vs. Atlanta Public schools State Board of Education Decision.

### 176.

### Violation #6
### APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN SHE WAS NOT FURNISHED WITH COMPULSORY PROCESS.

In a letter dated June 8, 2012, Appellant requested the compulsory process or subpoena requiring the production of the audiotapes of the meetings held in the conference room of M.E. Lewis Elementary on the following dates: December 8, 2011, January 9, 2012, January 17, 2012, February 9, 2012, February 16, 2012, and March 26, 2012. The board refused. This denied Appellant due process of law as O.C.G.A. 20-2-940(b)(4) provides in part upon request, the teacher shall be furnished with compulsory process or subpoena legally requiring the attendance of witnesses and the production of documents and other papers as provided by law. In addition the earliest date of the hearing was given in letter dated July 20, 2012 and the date of the hearing was August 2, 2012 which was changed by the Board of education during a July 26, 2012 meeting plaintiff had with counsel and have documented proof and witness testimony to prove that the Board of education changed the meeting and not plaintiff or her counsel and notice to this effect was not sent by Board of education. . Subsequently, the Board of · Education falsely pretended that counsel for plaintiff changed hearing date. The record shows that the Board of Education changed the hearing date and is documented through witness statements and certified mail sent to plaintiff council. However it is well settled in Georgia fair Dismissal Law that it the responsibility of the Board of Education and the hearing officer to notify plaintiff of all changes pursuant to 20-2-940 et seq. and can be found at O.C.G.A. 20-2-940c and can be found in appeal to the State Board of Education , Nigil Smith v. Atlanta Public School System Case No. 2011-26

In addition, Appellant, via counsel and personally, requested the production of open record requests and letters from attorney , and was not provided with such. School Board's attorney also denied the compulsory process in his letter dated July 20, 2012 plaintiff and stated in pertinent part "You have the exhibits" already which is in violation of the law for plaintiff did not have the exhibits attached to letter dated July 20, 2012 sent by counsel.

### 177

## Violation #7
### THE TRIBUANAL ABUSED ITS DISCRETION WHEN
### IT OVERRULED APPELLANT'S MOTION FOR CONTINUANCE.

On September 4, 5,6,7,8,and 9, 2012, Appellant communicated to counsel and two board of Education members that she was incapacitated due to debilitating medical reasons that she could not attend the hearing on September 11, 2012, as she was having  medical emergency procedure . The two Hancock County Board of Education members contacted both told plaintiff that they had received a letter from Attorney Harley, Boards attorney barring them from my case while the other three had full reign in plaintiffs case. There was no way possible that Appellant could attend the hearing on September 11, 2011. Appellant made her motion for continuance and it is in the record giving sufficient legal reasons why she could not attend the hearing.

178.

## Violation #8
### APPELLANT WAS DENIED DUE PROCESS OF LAW
### WHEN THE LOCAL BOARD DID NOT RENDER ITS
### DECISION WITHOUT THE PRESENCE OF COUNSEL .

The tribunal held a hearing without the presence of counsel. This violated Appellant 's due process rights as O.C.G.A. 20-2-940(b) provides in pertinent part any teacher against whom such charges listed in subsection (a) of the Code section have been brought shall be entitled to be represented by counsel . The record shows that Counsel called plaintiff and asked her to terminate his service to keep him out of Hancock County on Tuesday September 11, 2012. The call to plaintiff was made on Monday September 10, 2012 and later texted while plaintiff was engaged in medical procedure to send another copy of Medical Excuse to his office. The record shows that Plaintiff was unable to do so and therefore, the Doctor office sent the fax to his office and he made the request via text message at 11:46. Moreover, plaintiff shows that she sent via certified mail, return receipt a copy of the doctors excuses and medical records along with attached letter to council on September 5, 2012 and faxed the same excuse sent by Doctor to plaintiff on September  4, 2012 and retrieve by Librarian Associate with proof and witness testimony. In addition, from September 4, 2012 to September 11, 2012 is a six day notice according to the legal compensation of time. The record shows that counsel for plaintiff was again faxed at his request made on September 8, 2012 another copy of the medical excuse, sent September 9, 2012.

Pursuant to medical emergencies which is the law in the State of Georgia and in Nigil v. Smith , the State Board of Education stated that tribunals are rescheduled all of the time and Boards cannot abuse their discretion not to do so especially after giving plaintiff a deficient charge letter with no date, time or place as required by law and thus violated her due process rights and prejudiced plaintiff because the hearing dated was rescheduled a t a time that the Local Board members knew definitely that plaintiff could not be there.

179.

Violation #9

APPELLANT WAS DENIED DUE PROCESS OF LAW
WHEN THE LOCAL BOARD DID NOT RENDER ITS
DECISION WITHIN TEN DAYS AFTER THE RECEIPT
OF THE TRANSCRIPT IN VIOLATION OF 20-2-940(F)

On September 11, 2012, the tribunal held a hearing, in Appellant's absence, filed a transcript with the local board and was received by the board on September 17, 2012. The board did not vote and approve the decision for nonrenewal until October 11, 2012. See Order Attached. This denied Appellant due process of law, because the local board shall render its decision thereon within ten days after the receipt of the transcript O.C.G.A. 20-2-940 (f). Thus, O.C.G.A (f) required the Local Board to issue a decision within ten days after the receipt of the transcript." (emphasis added). Likewise, O.C.G.A20-2-1160 (a) must be read *in parimeteria*. Therefore, the Board of Education was required to render its decision in (10) days of receipt of the transcript. Plaintiff did not waive any of her rights and the Fair dismissal Act must be construed strictly and be held to strict compliance See State board of Education decision in Case No 2012-41, Gala Rachele v. Clayton county Board of education.

180.

Violation # 10

APPELLANT WAS DENIED DUE PROCESS OF LAW
WHEN THE BOARD DID NOT NOTIFY HER OF HER RIGHT
TO APPEAL THE DECISION TO THE STATE BOARD OF
EDUCATION AND DEPRIVED PLAINTIFF OF THE DESCIBED PROCEDURE AND
REQUIREMEMENTSOF SUCH AN APPEAL WHICH ARE PROVIDED IN THE LAW.

On October 11, 2012, the local board approved the recommendation of the tribunal but, however, the local board did not comply with the requirements of the law. The local board did not notify Appellant in writing of her right to appeal the decision to the State Board of education and did not clearly describe the procedure and requirements for such an appeal which are provided in the law. O.C.G.A. 20-2-1160(a); BCAEA 160-1-3-4 (4)(a) and is a non amendable defect and DECISION OF THE Board of education is final.

181

Therefore, Appellant was denied due process of law and law requires strict compliance. DEE DEEBERGBREITER V. RABUN COUNTY, 2012-09, DEMPSEY V. THE BOARD OF REGENTS OF THE UNVERSITY SYSTEM OF GEORGIA, 256 Ga. App. 291 (2002). This was prejudicial to the rights of Appellant; she could not have appealed anything she was unaware of, nor Appellant understand the procedure and requirements for such an appeal, because the board omitted this requisite information from the order of approval. A decision rendered by the Board of Education is binding on all parties and is required to be so via 20-2-1160(a) and is the penalty for not informing plaintiff of her rights to appeal and therefore tribunal held is a Void, non binding procedure.

182.

Plaintiff shows this Honorable Court that she tried to reserve her rights through filing a Writ Of Certiorari in the Superior Court on October 12, 2012 and was denied filing via phone conversation with Judge in Ocumulgee Circuit and was advised by the Honorable Judge that I could not file in the Superior Court and stated to plaintiff that her appeal rights were pursuant 20-2-1160 and after plaintiff tried to explain Weil v. Rockdale County and that she did not have anything confined to the record, the Chief judge told her flatly that she could not file which was in violation of her Federal and Georgia constitutional rights found   and states in pertinent part that a citizen of Georgia shall not be denied access to the courts and every citizen have the right to defend or oppose in the Courts  to the courts.

183.

Violation # 11:
APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN
HANCOCK COUNTY BOARD OF EDUCATION ATTORNEY
SENT APPELLANT AN IMPROPER, DEFICIENT 14-DAY LETTER IN NON
COMPLIANCE WITH 20-2-940 ET SEQ. THE NOTICE FAILED TO STATE THE PLAICE

IN WHICH THE TRIBUNAL WOULD BE HELD WHICH IS REQUIRED IN NOTICE. THE TRIBUNAL FURTHER ACTED WITHOUT AUTHJORITY OF LAW BY HOLDING A TRIBUNAL UNDER GEORGIA OPEN MEETING ACT IN TENNILLE, WASHINGTON, COUNTY, GEORGIA OUTSIDE OF THE GEOGRAPHICAL JURISDICTION OF THE TRIBUNAL WHICH IS REQURED BY LAW OCGA 50-14-1 ET SEQ TO BE OPENED TO THE PUBLIC. THE FAIR DISMISSAL ACT IS NOT SUBJECT TO THE CIVIL PRACTICE ACT BUT INSTEAD GOVERNED BY OPEN MEETING ACT SIGNED INTO LAW ON APRIL 17, 2012 BY GOVERNOR DEAL.

Plaintiff further alleges that on September 11, 2012, the local Board of Education located in Hancock County held a tribunal on behalf of plaintiff which was subjected to the open meetings Act pursuant O.C.G.A et seq. The Board of education advertised the tribunal as an open meeting and changed the location of regular meeting place as stated in the law. However, the Board of education violated the law by changing the geographical jurisdiction of the tribunal which is prohibited and failed to notify plaintiff as required by law 20-2-940c. The record shows that Plaintiff stopped by the hearing and two witnesses as she traveled back to the doctors to hand deliver the doctor notices to the tribunal and asked that the Hearing officer physically see her condition. Upon arrival, no tribunal was being held. The Open Meeting Act (HB397) makes it clear that no official business, policy or public matter formulated, presented, discussed or voted on can be held at a meeting outside of the County in which the Agency is situated. The tribunal was held in Tennille, which is in Washington County, Georgia located outside of Hancock County. And Hancock County does not have jurisdiction in Tennille , Georgia and neither witnesses or plaintiff  was informed or financially able to travel 45 or 50 miles outside of town and this was also prejudicial  to plaintiff. However pursuant to O.C.G.A 50-14-1 the meeting was illegal and therefore void. Plaintiff's further shows this Honorable Court that she was not informed of this place in any notice at all and therefore neither Plaintiff nor witnesses could was expected to attend witnesses were also not given notification or given a subpoena to attend.

184.

Plaintiff further shows this honorable court that her due process rights were violated pursuant O.C.G.A. 20-2-940(e)(4) which is the stipulation of a none disinterested Bar member. The record shows that plaintiff objected to the use of the attorney because he was close friends to defendants and would conspire with him and is a showing of an actual bias.

185.

Plaintiff shows this Honorable Court that her rights was further violated pursuant the procedural safeguard found at O.C.G.A 20-2-940et seq. when plaintiff chose all tribunal members from outside of County andt hey were all Superintendent and work for or with School Boards attorney.

Plaintiff was also denied progressive discipline and an opportunity to improve as required by O.C.G.A 20-2-210 for she was never told by any administration or met with any administration pursuant to charges made against plaintiff.

## Count X

## DEPRIVATION OF DUE PROCESS AS PROHIBITED BY THE 1983 CONSTITUTION OF THE STATE OF GEORGIA AS AMENDED.

186

Plaintiff realleges the premises thus far asserted and further shows this honorable Court as follows:

187.

Defendants violated plaintiff's due process rights secured to plaintiff by Article I, Section I, paragraph I of the Georgia constitution

188.

Plaintiff shows and realleges that beginning in 2007 upon employment with Hancock county Board of education, Plaintiff was subjected to a pattern of conduct entailing plaintiffs being harassed, suspended without pay, transferred without notice, arrested, and denied all access to internal grievances and retaliated against for filing external grievances and violated O.C.G.A. 20-2-944 and O.C.G.A. 20-2-940g.

189.

Plaintiff further shows that such arbitrarily and capricious deprivations by defendants caused plaintiff to undergo severe emotional distress, to incur litigation cost and other special damaged.

## COUNT XI
## DEFAMATION OF CHARACTER

190.

Plaintiff realleges premises thus far asserted and show this Honorable Court as follows:

191.

The defendants placed falsified documents of stigmatizing nature in plaintiff's personnel file and these false and stigmatizing documents were published to third parties who did not have the right nor privilege to know the content thereof.

192.

Plaintiff shows further that such stigmatizing publications pertaining to plaintiffs were inserted into her file out of actual malice. Moreover, said publications constitute libel perse.

193.

Plaintiff further show this court that the false arrest slandered her character followed by unwarranted student investigation with the intent to indirectly mislead the parents, students, and community at large that the arrest was because plaintiff hit a student.

194.

Illegal suspensions in violation of plaintiff's constitutional due process rights and O.C.G.A. 20-2-940g were published in the newspaper on the front page.

195.

Plaintiff realleges the premises thus far asserted and further shows this honorable court as follows:

196.

Defendant's conduct was extreme and outrageous and manifested conscious indifference and reckless disregard for truth and plaintiffs wellbeing in general.

## COUNT XII

## Intentional Infliction of emotional distress

197.

Plaintiff shows that defendants were in a position to exercise control over her and thus exercised a special relationship with her.

198.

Plaintiff shows that defendant's conduct, as it related to plaintiff, was so extreme and outrageous that even in absence of special relationship, no reasonable person would be expected to withstand such treatment without being emotionally traumatized.

199.

Defendants denied plaintiff of her 5th and 14th constitutional right to a fair dismissal hearing intentionally and willfully and engaged in conspiracy and fraud because any hearing based on the material false evidence and documents placed in her file to contrive the basis for her termination, would taint such proceeding to the extent of rendering it void in its entirety.

## Count XIII

## Fraud and falsification of evidence

### 200.

On June 13, 2012, plaintiff viewed her personnel file and found countless of fraudently documents that plaintiff never seen. Plaintiff discovered approximately 20 documents which included the 15 documents untitled and undated given to plaintiff on December 8, 2011.

### 201.

Plaintiff presents to this court 42 cases of falsification of evidence and overt fraud by the Superintendent and local administration of plaintiff which is 100% in contrast of the true character of plaintiff and is documents contain misrepresentation and falsification of plaintiffs professional conduct and character as an educator.

### 202.

Plaintiff was denied for five years of continuous action all opportunities afforded to plaintiff and given to all educators to deny and address documents purposefully placed in plaintiffs personnel file by defendants.

### 203.

Defendants intentionally falsified personnel file with the intent to use documents to demonstrate a reprehensible pattern of conduct in absolute and direct contravention of plaintiff's true professional character and conduct.

204.

Plaintiff further shows this honorable court that the falsified documents also served as the basis for her termination and was an illegal basis to attack plaintiff's character, thus alleging substandard professional conduct.

## COUNT XIV

## VIOLATION OF THE EQUAL PROTECTION CLAUSE

205.

Plaintiff shows this honorable court that during the year of 2011-2012, many teachers were punished for severe conduct infractions and many requested to be heard and was given an opportunity to be heard and others that were punished was automatically given an opportunity to be heard and were similar situated to plaintiff, but did file a complaint of discrimination.

206.

Plaintiff further shows this honorable court that a white teacher accused a janitor of sexual harassment and the janitor was immediately fired, but plaintiff complaint of discrimination have never been heard and she was subjected to differential treatment and overt and blatant retaliation for complaining.

## Count XV
## Violation of plaintiffs First Amendment rights as guaranteed to her through the Georgia and Federal Constitution

207.

Plaintiff shows this honorable court that she was terminated also because of her exercise of her constitution rights of freedom of speech and freedom of expression.

208.

Plaintiff shows this through here participation in public policy, state investigations and

WHEREFORE, plaintiff prays as follows:

a.) That summons and process issue pursuant to law
b.) That plaintiff be awarded general damages
c.) That plaintiff be awarded punitive and compensatory damages in the amount of $999.000 or to be determined by the lightened cautious of a jury.
d.) That plaintiff be awarded special damages in the amount proven by jury
e.) Plaintiff is reinstated with back pay, front pay, benefits, tenure re-established and retirement re-established back to original date and time prior to breach of contract and wrongful termination.
f.) Plaintiff is given trial by jury
g.) That plaintiff be given all other relief deem just and proper in the premises including attorney fees pursuant to O.C.G.A
h.) That this court will vacate the void orders in the criminal case that can be raised at any time in any proceeding due to the lack of subject matter jurisdiction

RespectedfullySubmitted,

This 3rd day of September 2013.

Ms. Stephaine Chatman, Per Se
5029 Pumping Station Road
Sparta, Ga. 31087

Hancock County Board of Education
P.O. Box 488 or

Sparta, Ga 31087
Defendants

58

FILED IN OFFICE
TIME 4:00pm

SEP 0 3 2013

CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

**CERTIFICATE OF SERVICE**

I, Stephanie Chatman, hereby certify that I have personally served upon the Hancock County Board of Education of Hancock County, Georgia true and correct copy of the Complaint filed and attachments.

Hancock County Board of Education
P.O. Box 488
Sparta, Georgia 31017

Stephaine Chatman
5029 Pumping Station Road
Sparta, Georgia 31087

Done this ___3rd___ day of ___September___ 2013

Stephaine Chatman

Notary Public
My Commission Expires:
5/16/17

FILED IN OFFICE
TIME 4:00pm

SEP 0 3 2013

CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

## VERIFICATION THROUGH AFFIDAVIT

I, Stephaine Yvonne Chatman states under oath that I am aware of the
content of the herein and foregoing complaint by reading the allegations therein. I
do in good faith represent to the court that the best of my knowledge and belief after
reasonable inquiry the complaint is well grounded in fact and is warranted by
existing law or a good faith argument for the extension, modification, or reversal of
existing law, and such actions not interposed for any improper purpose, i.e., to
suppress a right of free speech or to petition government to harass, to cause
unnecessary delay, or to needlessly increase cost of litigation. I am at least 21 years
of age or older and has full mental capacity.

Sworn and subscribed
Before me this _3rd_ day of

September 3, 2013
Notary Public
My Commission Expires:

_5/16/17_

Stephaine Chatman
Affiant

E1

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Stephalne Y. Chatman<br>5029 Pumping Station Road<br>Sparta, GA 31087 | From: Atlanta District Office<br>100 Alabama Street, S.W.<br>Suite 4R30<br>Atlanta, GA 30303 |
|---|---|

FILED IN OFFICE
TIME 4:00.pm
SEP 0 3 2013

CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 410-2012-04380 | Jose F. Quinones,<br>Investigator | (404) 562-6830 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination In Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

JUN 0 4 2013

Enclosures(s)

Bernice Williams-Kimbrough,
District Director

(Date Mailed)

cc:   Phillip L. Hartley
Harben, Hartley & Hawkins, LLP
340 Jesse Jewell Parkway
Wells Fargo Center, Suite 750
Gainesville, GA 30501

B2



**BULLPUPS**

# M.E. Lewis Sr. Elementary School
**11145 Highway 15 North**
**Sparta, Georgia 31087**
**(Phone) 706-444-7028**
**(Fax) 706-444-0380**

**Mr. Charles Jones, Principal**
**Dr. Felicia Evans, Assistant Principal/Curriculum Director K-5**

FILED IN OFFICE
TIME 4:00 pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

April 26, 2012

Dear Ms. Stephanie Chatman:

You are hereby notified that your contract of employment with the Hancock County Board of Education will not be renewed for the 2012-2013 school year. Therefore, your employment with this School System will terminate at the conclusion of this school year.

You have the right to certain procedural safeguards before you can be demoted or dismissed. These safeguards include the right to notice of the reasons for the action against you and the right to a hearing. If you desire these rights, you must send to the school superintendent by certified mail or statutory overnight delivery a statement that you wish to have a hearing; and such statement must be mailed to the school superintendent within 20 days after this notice was mailed to you. Your rights are governed by subsection (b) of Code Section 20-2-211, Code Section 20-2-940, and Code Sections 20-2-942 through 20-2-947, and copies of these laws are enclosed.

Respectfully,

Mr. Charles Jones,
Principal

Enclosures

E3



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS
SOUTHERN DIVISION, ATLANTA OFFICE

November 17, 2010

FILED IN OFFICE
TIME 4:00pm

SEP 0 3 2013

CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

Ms. Stephaine Chatman
5029 Pumping Station Road
Sparta, Georgia 31087

Dear Ms. Chatman:

Re: Complaint #04-11-1061

This is to acknowledge that the U. S. Department of Education, Office for Civil
Rights (OCR), Atlanta Office, received your complaint on November 15, 2010. We
are currently evaluating your complaint to determine if OCR has the authority to
investigate your allegation(s).

If OCR has the authority to investigate your allegation(s), we require a signed
consent form when identification of the complainant is necessary to resolve the
complaint. In addition, if you filed this complaint electronically, we require a signed
consent form. Please sign and return the enclosed copy of the consent form by mail,
or you may fax it to us at (404) 974-9471. If OCR does not receive the signed consent
form within 20 calendar days from the date of this letter and disclosure of your
identity is necessary, this complaint will be closed.

If you are filing on behalf of another person, you are responsible for securing written
consent from that individual. Where the person is a minor (under the age of 18) or a
legally incompetent adult, the consent form must be signed by that person's parent
or legal guardian. OCR must receive the signed consent form within 20 calendar
days from the date of this letter or the complaint will be closed.

We have enclosed a copy of "OCR's Complaint Processing Procedures" to provide you
with an overview of our complaint evaluation and resolution process. OCR will
contact you by telephone or by letter in the near future. However, if you need to
contact our office, you may do so by calling (404) 974-9406 Monday through Friday
between the hours of 8:30 a.m. and 5:00 p.m. Please reference the complaint
number noted at the top of the page to ensure prompt handling of your case.

Sincerely,

*Lizzie Walters*

Lizzie Walters
Administrative Team

Enclosure(s)

61 FORSYTH ST. S.W., SUITE 19T70, ATLANTA, GEORGIA 30303
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

DOL-442B1(R-08/09)
NM2008

GEORGIA DEPARTMENT OF LABOR
CLAIMS EXAMINER'S DETERMINATION

FILED IN OFFICE
TIME 4:00 pm     E4

SEP 0 3 2013          7000

CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

SSN _____ ***-**-0261

BYB _____ 08/10/12

CWB _____ 08/05/12

CAREER CENTER
6600
MILLEDGEVILLE
156 ROBERSON MILL RD.
P.O. BOX 730
MILLEDGEVILLE , GEORGIA 31059
FAX # (478) 445-2040

| CLAIMANT | EMPLOYER |
|---|---|
| STEPHAINE Y CHATMAN<br>5029 PUMPING STATION ROAD<br>SPARTA GA       31087 | HANCOCK COUNTY BOARD OF<br>EDUCATION<br>PO BOX 488<br>SPARTA   GA   31087 |

## SECTION I   CLAIM DETERMINATION

Benefits are allowed as of 08/05/12.

## SECTION II   LEGAL BASIS FOR DETERMINATION

Section 34-8-194 (2) (A) of the Employment Security Law says that you cannot be paid unemployment benefits if you were fired from your most recent employer for not following your employer's rules or orders. In addition, you may not be paid unemployment benefits if you were fired for failing to perform the duties for which you were hired, if that failure was within your control. You also cannot be paid benefits if you were suspended for any of these same reasons. The law says that your employer has to show that discharge or suspension was for a reason that would not allow you to be paid unemployment benefits. If you cannot be paid unemployment benefits under this section of the law, you may qualify at a later time. To do this, you must find other work and earn wages covered under unemployment law. The covered wages must be at least ten times the weekly amount of your claim. If you then become unemployed through no fault of your own, you may reapply for unemployment benefits.

## SECTION III   REASONING

Your employer fired you for insubordination. If you violate a standard of conduct it is the same as violating an employer rule. The employer has the burden of proving, by a preponderance of evidence, that such violations took place. Available facts do not show that you violated employer rules or standards. Therefore you can be paid unemployment benefits.

## SECTION IV   ACCOUNT CHARGEABILITY

NOTICE TO EMPLOYER:

## SECTION V   APPEAL RIGHTS

NOTE: This determination will become final unless you file an appeal on or before 09/13/12. If you file an appeal you must continue to report on your claim as instructed, or you will not be paid if you win your appeal. Refer to the Claimant Handbook booklet or contact an office of the Georgia Department of Labor for more details.

| Georgia Department of Labor | 08/24/12 | 08/29/12 |
|---|---|---|
| Claims Examiner | Date of Interview | Mail Date |





UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

April 2, 2012

Ms. Stephanie Chatman
5029 Pumping Station Road
Sparta, Georgia 31087

Dear Ms. Chatman:

I am writing to acknowledge your recent correspondence to the U. S. Department of
Education, Office for Civil Rights' (OCR) Office of the Deputy Assistant Secretary for
Enforcement (DAS-E), which you requested reconsideration of your complaint
(Complaint Number: 04-11-1061) that you filed with OCR's Atlanta Enforcement Office.
I am pleased to respond.

I am forwarding your correspondence to the DAS-E for appropriate handling. Upon
completion of the requested reconsideration of your complaint, the DAS-E will issue a
response. OCR is committed to a high quality of resolution of every case.

If you have any further questions or concerns regarding your requested reconsideration of
your complaint, you may contact the DAS-E directly. Below, I have listed the mailing
address for the DAS-E.

> Deputy Assistant Secretary
>   for Enforcement
> Office for Civil Rights
> U. S. Department of Education
> 400 Maryland Avenue, S.W.
> Washington, D.C. 20202-1100
> Email: ocrappeals@ed.gov

I hope you find this information helpful.

Sincerely,

Jerelyn Berry
Customer Service Team
Office for Civil Rights

cc:  OCR's Deputy Assistant Secretary for Enforcement

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

$E6$



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

61 FORSYTH ST., SOUTHWEST, SUITE 19T10
ATLANTA, GA 30303-8927

REGION IV
ALABAMA
FLORIDA
GEORGIA
TENNESSEE

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

Ms. Stephanie Chatman
5029 Pumping Station
Sparta, GA 31087

February 2, 2012

Re: OCR Docket # 04-12-1126

Dear Ms. Chatman:

On January 03, 2012, the U.S. Department of Education (Department), Office for Civil Rights (OCR) received the above-referenced discrimination complaint you (Complainant) filed against the Hancock County School District (District) alleging individual employment discrimination, on the basis of age as well as retaliation. Specifically, you made the following allegations:

(1) In January 2011 two District Board members voted in the minority not to allow you to return to work following medical/administrative leave that ended in February 2011;

(2) In February of 2011 the Superintendent of the District (Superintendent) denied you an opportunity to meet before the District Board of Education (Board) to discuss the impropriety of your administrative leave;

(3) In April 2011, the Superintendent gave you a contract for the 2011-12 school year which you allege contained phrasing referencing "medical doctor visits" that was duplicative of phrasing used by her former School District (DeKalb), against which you filed an earlier OCR complaint;

(4) In May 2011, the Superintendent attempted to coerce the Principal of M.E. Lewis Elementary School (Principal) to write you up;

(5) On August 3, 2011, the Principal placed underperforming students in your class, in effort to set you up for failure;

(6) On August 30, 2011, the Superintendent opened an investigation against you without disclosing the cause to you or the Principal;

(7) Since September 2011, the Superintendent has only partially responded to the open records requests you have made;

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

*E7*



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS

61 FORSYTH ST., SOUTHWEST, SUITE 19T10
ATLANTA, GA 30303-8927

REGION IV
ALABAMA
FLORIDA
GEORGIA
TENNESSEE

Ms. Stephanie Chatman
5029 Pumping Station Road
Sparta, Georgia 31087

JAN 27 2012

FILED IN OFFICE
TIME 4:00pm

SEP 0 3 2013

CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

Re: Complaint #04-11-1061

The U.S. Department of Education (Department), Office for Civil Rights (OCR), has completed its investigation of the above-referenced complaint which you (Complainant) filed on November 15, 2010, against the Hancock County School District (District) alleging discrimination on the basis of retaliation. Specifically, the Complainant alleged that the District subjected her to retaliation because she filed previous OCR complaints against another school district in Georgia. The Complainant alleged that the District retaliated against her by:

1. Treating her differently than another employee in March 2010, with regard to disciplinary sanctions imposed for alleged violations of standardized testing procedures;
2. Subjecting her to increased surveillance in her classroom from 2007 to 2010;
3. Attempting to transfer her to a high school in July 2010, even though she lacked certification at the high school level;
4. Encouraging two school resource officers to file an internal grievance against her in November 2010; and
5. Failing to properly investigate an internal grievance that was filed against her in November 2010, by school resource officers.

OCR investigated this complaint pursuant to Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. §§ 2000d *et seq.*, and its implementing regulation at 34 C.F.R. Part 100, which prohibit discrimination on the basis of race, color, or national origin by recipients of Federal financial assistance from the Department. As a recipient of Federal financial assistance from the Department, the District is subject to Title VI.

OCR investigated the following legal issue:

> Whether the District retaliated against the Complainant because she engaged in a protected activity in noncompliance with the regulation implementing Title VI at 34 C.F.R. § 100.7(e).

In reaching its determination, OCR reviewed and analyzed data pertinent to the complaint submitted by the Complainant and the recipient and reviewed witness statements provided on behalf of the Complainant. OCR also interviewed District staff[1] as well as the Complainant. OCR evaluates evidence obtained during an investigation under a preponderance of the evidence standard to determine whether the greater weight of the evidence is sufficient to support a

---

[1] The District staff included individuals identified by the Complainant as witnesses.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

www.ed.gov

*E8*

OCR complaint # 04.12.1126
Page 2

(8) On November 14, 2011, you were not allowed to address the Board based on your alleged failure to align your presentation with the subject you were scheduled to speak on;

(9) On November 28, 2011, you were yelled at in a meeting by the Principal and the Superintendent after you reported an alleged break in and vandalism of your classroom;

(10) On November 30, 2011, you were given a letter of warning for unprofessional conduct/insubordination for behavior at the November 28, 2011 meeting;

(11) On December 8, 2011, the Superintendent copied various negative emails and put them in your personnel file;

(12) On December 12, 1011, you were denied access to Districts' grievance procedures when you were not allowed to present to the Board;

(13) On December 15, 2011 the District changed the students in your class, in effort to facilitate poor student performance, which would, in turn, adversely impact your own performance;

(14) On January 6, 2012 you received letters threatening you with termination because you exercised your due process rights; and,

(15) On January 9, 2012 you were again denied an opportunity to speak with the Board.

Pursuant to government-wide regulations, OCR is required to refer allegations of age discrimination in employment to the Equal Employment Opportunity Commission (EEOC) for further action.

The purpose of this letter is to advise you that OCR is referring this complaint to the EEOC at the following address:

Bernice Williams-Kimbrough
Director
Equal Employment Opportunity Commission
Sam Nunn Atlanta Federal Center
100 Alabama Street, SW, Suite 4R30
Atlanta, Georgia 30303
Phone 800-669-4000

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY GA

The date this agency received the complaint shall be deemed the date the complaint is received by the EEOC, unless an earlier charge was received by the EEOC. Please direct further correspondence about this complaint to the EEOC District office identified above.

E9

IN THE SUPERIOR COURT OF HANCOCK COUNTY

STATE OF GEORGIA

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

STEPHAINE CHATMAN,                              )

APPELLANT,                                      )

                                                )      CIVIL ACTION__13CV - 106__

V.                                              )

                                                )

HANCOCK COUNTY SCHOOL DISTRICT,                 )

RESPONDENT.                                     )


## AFFIDAVIT.


COMES NOW, Shedrick Lawson, on my personal knowledge of the matters stated herein and that I am competent to testify to the matters herein and that I am under no legal disabilities states:

1.

That on January 9, 2012, I went to the office to see administration on some official agriculture business. During that time Ms. Stephanie Chatman was called to the office and I had to wait for administration was in the conference room with tape recording set up.

2.

$E10$

That about a couple of minutes or so later Ms. Chatman walked into the office and the secretary directed her to the conference room. The door remained opened to the conference room. I was ther in the office before and after Ms. Chatman left the office.

3.

That I saw Mr. Jones, Principal of Elementary School hand Ms. Chatman white envelopes and engage in a short conversation. Ms. Chatman came out of the conference room and used her cell phone and returned in about a minute and the administration waited her return.

4.

That Ms. Chatman wrote a note on the circulation desk and had the secretary to copy it and gave it to Mr. Jones, Principal and Dr. Evans.

5.

That Ms. Chatman never screamed or made any noise at all during her receipt of information from administration. Ms. Chatman washer usual calm demeanor.

6.

That around the end of February and or the first of March, I heard Mr. Jones chastised Ms. Chatman in the hallway in reference to a letter she wrote to the newspaper. Ms. Chatman assured Mr. Jones that she never wrote a letter and the letter was written by the editor and you should call him.

7.

That he stated in the same conversation that you were not unprofessional this morning and the letter given to you by the secretary was from the Superintendent for going to the board members. She asked to meet with him away in his office in reference thereof.

8.

$E11$

That Ms. Chatman was to "ignore the e-mail he sent to her this morning" and he felt that the letter placed him in a hostile environment. The conversation took place around 11:00am during the class restroom break. Ms. Chatman stated that I will take all open letters explained to he, but not closed. Mr. Jones re asserted that the e-mail was to be ignored and there was nothing further to be discussed.

9.

That Ms. Chatman asked me to give her a statement and I refused to get involved at that time but was not at all surprised at Mr. Jones because of his involvement of unethical conduct at the High School in which I was employed under his administration. Falsifying documentation on employees appears to be a pattern of conduct for him and have been sent to Professional standards by employees for such ethic violations.

10.

That during the early months of the school year of 2011-2012, Mr. Jones, bragged to all of the parents of the fourth graders about how the school had conducted a GAPPS ANAYLSIS and that the team stated that Ms. Chatman classes were the BEST that they had seen in the State.

11.

That Ms. Chatman never blurted out in a faculty meeting or walked out a faculty meeting. As a matter of fact, Ms. Chatman is one of the best and most professional educators in Hancock County and is one of the only persons to ask questions in the meeting and the culture of Hancock County School system is not to ask question. As a matter of fact, administration never spoke to us about leaving a faculty meeting and many teachers leave all the time for various reasons. Many teachers have given Ms. Chatman statements to the fact that she never walked out of a faculty meeting.

12.

E12

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

May 10, 2013
Mrs. Martha Smith
281 Charlestown Road
Sparta, Georgia 31087
(706) 444 -7374

To: Whom It May Concern:

      I am writing you this witness statement to verify that I worked with Ms. Chatman during the years of 2009-2010 at M. E. Lewis Elementary School. Also, I taught Ms. Chatman and have known her for years. She was astute as a student. I retired in 2007 after thirty four years and am still employed as an Educator with 19 years of experience with the Georgia Correctional Institution. During the 2008-2009 school years I received a phone call from the principal to help with a class because the district was short of a teacher. After accepting the assignment, I was placed on the Fifth grade team with Ms. Chatman as a team mate. As Ms. Chatman's former teacher I was very proud that she had chosen Education as a profession and I taught her Social Studies and subsequently, she taught Social Studies. She was professional every day and was a dedicated Educator. She was very supportive and helpful to her children and was always on task in her class. She made sure her students mastered the skills.

      However, the main reason I am writing this statement is to testify that I was scheduled on the agenda with the Hancock Board of Education on December 12, 2011 to meet in Executive Session. Ms. Chatman was supposed to be scheduled also and was present with her notebook to present. After Ms. Chatman was not called in, she came in behind me and asked when she was going to be called into the meeting and stated that she was scheduled to be there. Mrs. Reeves, Superintendent of Schools, laughed and asked Ms. Chatman could she come back and present during the next Board meeting held in January 2012 because the schedule was packed. Ms. Chatman agreed in the presence of the Board members and read a statement to the Board which stated that she was indeed scheduled to present on December 12, 2012. After I was relieved from the meeting, I saw Ms. Chatman on the way out and I said to her that they will hear you in January and she said, they are not going to hear me in January, I have been here before. I saw Ms. Chatman a couple months later and asked her was she heard and she said," no, and I was not going to be heard". We did not discuss the matter any further.

Thank You,

*Mrs. Martha Smith*
Mrs. Martha Smith

SHERIFF'S ENTRY OF SERVICE     SC-85-2     CLYDE CASTLEBERRY CO., COVINGTON, GA 30015

Civil Action No. _13CV-106_

Date Filed _9-3-2013_

_13CV10_

Attorney's Address

| | | |
|---|---|---|
| Superior Court | ☑ | Magistrate Court ☐ |
| State Court ☐ | | Probate Court ☐ |
| Juvenile Court ☐ | | |

Georgia, _Hancock_ _____ COUNTY

_Stephanie Chalmon_ _____

_____ Plaintiff

VS.

_Hancock County School District_

_____ Defendant

Name and Address of Party to be Served.

_Hancock County School District_

_H511 Hwy 15 North_

_Sparta Ga. 31087_

_____ Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☑

I have this day served the defendant _Hancock Co. School District_ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _Superintendent Evanklyn J. Reaves (BOE)_ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐

Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _03rd_ day of _September_ , 20 _13_ .

_Sheriff Ingram_ _____

DEPUTY

SHERIFF DOCKET _R-13_ PAGE _408_

SUMMONS                    SC-85-1                           CLYDE CASTLEBERRY CO., COVINGTON, GA., 30209

## IN THE SUPERIOR/STATE COURT OF _Hancock_ COUNTY
### STATE OF GEORGIA

_Stephanie Y. Chatman_      CIVIL ACTION
NUMBER _13CV-1016_

                                  **PLAINTIFF**

FILED IN OFFICE
TIME 4:00pm
SEP 0 3 2013
CLERK SUPERIOR COURT
HANCOCK COUNTY, GA

VS.

_Hancock County School District_

                                 **DEFENDANT**

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is: .

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _3rd_ day of _September_ , 19 _2013_

                                Clerk of Superior/State Court

                    BY _Kassandra Langdon_ Chief Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.